**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BUTLER, individually and on behalf of all others similarly situated, | Case No.:  5:24-cv-2420 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| SEVENTH GENERATION, INC., | |
| Defendant. | |

Plaintiff Christopher Butler ("Plaintiff") brings this action against Seventh Generation, Inc., ("Defendant") individually and on behalf of all others similarly situated and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys as follows:

## NATURE OF THE ACTION

1. This is a consumer protection action that seeks to remedy Defendant's deceptive business practices which mislead customers about the amount of uses they are getting out of Defendant's Seventh Generation laundry detergent products, including Defendant's EasyDose, Clean with Purpose, and Power+ brands (the "Products").

2. Defendant prominently represents its laundry detergent products sold under its Seventh Generation EasyDose brand ("EasyDose Products") as "ultra concentrated" laundry detergent containing enough detergent to wash "66 loads" of laundry. Reasonable consumers interpret "66 loads" to mean 66 full loads of laundry (instead of half-loads). This is reinforced by the rear label which states in bold letters that "**1 squeeze = 1 load**."

3. However, the EasyDose Products do not contain 66 full loads worth of detergent. A disclosure is (1) ***hidden on a peelable flap on the back of the bottle*** which is difficult to peel back and then requires the consumer to (2) ***flip the peeled back label upside down*** to see that it takes <u>two squeezes</u> for a full load of laundry. Two squeezes amount to only 33 loads of laundry detergent per bottle. No reasonable consumer would see this disclosure before purchasing the EasyDose Products.

4. The hidden peelable flap on the rear label of the EasyDose Products also instructs consumers to follow three steps: "1. Pop the cap. 2. Flip upside down. 3. Squeeze firmly into dispenser or washer until liquid stops – the EasyDose cap measures for you! Flip, close the cap, and store upright."  The rear label also represents that the EasyDose cap measures 0.35 fl. oz. or 10.3 mL of detergent per

1

squeeze, providing "66 loads as measured to medium dose."

5. However, when following the EasyDose Product's instructions, the EasyDose cap was found to measure between 0.39 to 0.67 fluid ounces per squeeze, and therefore only provides 34 to 59 medium loads of laundry per bottle, and not 66 loads as advertised.

6. Defendant also represents that its laundry detergent products sold under its Seventh Generation Clean with Purpose brand ("Clean with Purpose Products") contain enough detergent to wash "60 loads" of laundry. Reasonable consumers interpret "60 loads" to mean 60 full loads of laundry (and not half-loads). However, the rear labels of the Clean Products instruct consumers to measure to "Line 3 (1.5 fl oz / 44 mL) for medium loads" or "line 5 (2.2 fl oz / 65 mL) for heavily soiled or larger loads." Following the Products' instructions, each bottle only provides for 40 full loads of laundry, and not 60 loads as advertised.

7. Defendant also represents that its laundry detergent products sold under its Seventh Generation Power+ brand ("Power+ Products") contain enough detergent to wash "50 loads" of laundry. Reasonable consumers interpret "50 loads" to mean 50 full loads of laundry (and not half-loads). However, the rear labels of the Power+ Products instruct consumers to measure to "Line 4 (1.75 fl oz / 51 mL) for medium loads; to just above line 5 (2.6 fl oz /76 mL) for heavily soiled or larger loads." Following the Products' instructions, each bottle only provides for 33 full loads of laundry, and not 50 loads as advertised.

8. Accordingly, Defendant's packaging is false and misleading to reasonable consumers.

9. Plaintiff read and relied on Defendant's advertising when purchasing the EasyDose Product and was damaged as a result. Plaintiff brings this action individually and on behalf of all similarly situated consumers to remedy Defendant's unlawful acts.

//

CLASS ACTION COMPLAINT

## **JURISDICTION AND VENUE**

10.   This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

11.   The court has personal jurisdiction over Defendant. Defendant purposely availed itself to California because Defendant does business within this judicial district as entity number 2578546, sells the Products in this judicial district, and is committing the acts complained of below within this judicial district.

12.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the injury in this case substantially occurred in this District. Defendant has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Products in this District, and is subject to personal jurisdiction in this District.

## **PARTIES**

13.   Plaintiff Christopher Butler is an individual consumer who, at all times relevant to this action, was a citizen of and resided in California. Plaintiff currently resides in San Bernadino County. In 2023, Plaintiff purchased the EasyDose™ Power+™ Ultra Concentrated Laundry Detergent Product at a retail store in in Orange County, California. Plaintiff saw the misrepresentations made on the Product label prior to and at the time of purchase and understood them as representations and warranties that each product contained the advertised laundry load amount. Plaintiff relied on the representations made on the Product's label in deciding to purchase the Product. These representations and warranties were part of his basis of the bargain, in that he would not have purchased the Product, or would only have been willing to purchase the Product at a lower price, had he known the representations were false. Plaintiff would like to purchase the Product again if the advertising statements made

on the Product labels were, in fact, truthful and represented in a manner as not to deceive consumers.

14.    Defendant Seventh Generation, Inc. is a Vermont corporation with its principal place of business in Englewood Cliffs, VT. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products in the United States and California. At all relevant times, Defendant was authorized to do business in the State of California and is doing business in California.

## FACTUAL ALLEGATIONS

### A. Defendant's EasyDose Laundry Detergent Products

15.    Defendant manufactures and sells laundry detergent under its EasyDose brand. The EasyDose Products are sold in various scents. The front labels of the EasyDose Products prominently represent that the Products are "ultra concentrated" and contain 66 loads worth of laundry detergent.

16.    Below is a true and correct copy of the front label of Defendant's EasyDose Product in the fresh lavender scent:

//
//
//
//
//
//
//
//
//
//
//
//
//

CLASS ACTION COMPLAINT





17.    The rear labels of the EasyDose Products represent that "1 squeeze = 1 load." Below is a true and correct copy of the EasyDose Product's rear label:

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



27     18.   Consumers must then (1) peel back the rear label of the Products, and (2)

28   flip the EasyDose Products upside down to read the Products' use instructions, which

CLASS ACTION COMPLAINT

reveal that one (1) squeeze is required for what Defendant defines as a "medium" load of laundry, and two (2) squeezes are required for what Defendant defines as a "large" load of laundry:



19. Defendant deliberately hides the true nature of its EasyDose Products behind a pamphlet that is not noticeable upon picking up the Products for the first

CLASS ACTION COMPLAINT

time. These pamphlets are sealed to the Products and only with careful effort can they be revealed without being torn. Consumers must manipulate the EasyDose Products by turning them upside down to discover their true nature.

20.    Contrary to the representations on the Products' front labels, the upside-down peeled back pamphlet reveals that the EasyDose Products can only provide 33 large or full loads of laundry.

21.    The Products' front labels do not contain any clarifying information or reveal that the "66 loads" advertisement is only as measured to what Defendant defines as a "medium dose" of laundry.

22.    Defendant does not disclose that reasonable consumers who do laundry in loads reasonable characterized as "large" therefore only get half as many, or 33 loads of laundry from the Products, and not 66 loads as advertised.

23.    The EasyDose Products' labels also provide an "Earth Friendly Tip" that encourages consumers to use less electricity by line drying their laundry. Defendant's advertising of "66 loads" as measured to a medium dose contradicts this message, as washing twice as many medium loads is less energy efficient than washing fewer large or full loads.[1]

24.    Defendant further claims that its laundry detergent sold under the EasyDose brand contains "Auto Dosing Technology" that "measures the right amount – every time."[2]

25.    The "How to Use" instructions found within the peelable flap on rear label of the EasyDose Products instruct consumers to "1. Pop the cap. 2. Flip upside down. 3. Squeeze firmly into dispenser or washer until liquid stops – the EasyDose cap measures for you! Flip, close the cap, and store upright." *See* ¶ 18, *supra*. The rear

---

[1] https://www.cenhud.com/en/my-energy/save-energy-money/blog/10-tips-to-save-energy-in-the-laundry-room/

[2] *See* https://www.seventhgeneration.com/easydosetm-ultra-concentrated-laundry-detergent-mango-mandarin

8

CLASS ACTION COMPLAINT

label also represents that the EasyDose cap measures 0.35 fl. oz. / 10.3 mL of laundry detergent per squeeze, providing "66 loads as measured to medium dose." *Id*.

26.    However, the EasyDose cap does not measure 0.35 fl. oz. of laundry detergent per squeeze as advertised. Instead, the EasyDose cap was found to measure between 0.39 to 0.67 fluid ounces per squeeze, and therefore only provides 34 to 59 medium loads of laundry per bottle, and not 66 loads as advertised.

27.    For these reasons, the EasyDose Products do not contain 66 loads of laundry detergent as advertised.

28.    Defendant's label misrepresentations and omissions are material to reasonable consumers, including Plaintiff. The laundry load representation indicates the number of loads of laundry the Products can provide, and the primary purpose of the Products is to serve as a detergent for laundry.

29.    Reasonable consumers are therefore  likely to be deceived by the Products' labels.

**B. Defendant's Clean with Purpose Laundry Detergent Products**

30.    Defendant manufactures and sells laundry detergent under its "Clean with Purpose" brand. The Clean with Purpose Products are sold in various scents. The front labels of the Clean with Purpose Products prominently represent that the Products contain 60 loads worth of laundry detergent.[3]

31.    Below is a true and correct copy of the front label of Defendant's Clean with Purpose Product in the Free & Clear scent:

//

//

//

//

_____

[3] Defendant also manufactures a Clean with Purpose "Concentrated" version advertised as containing 53 loads of laundry. *See* https://www.seventhgeneration.com/concentrated-laundry-detergent-geranium-blossoms-vanilla-40-fl-oz

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24    32.    The rear labels of the Clean with Purpose Products reveal that the
25  Products contain 60 loads of laundry only "as measured to medium dose," and
26  consumers must measure to 1.5 fl. oz. of detergent for what Defendant defines as a
27  "medium" load of laundry, and measure to 2.2 fl. oz. of detergent for what Defendant
28  defines as "heavily soiled or larger loads."



//

//

//

CLASS ACTION COMPLAINT

33.    The Clean with Purpose Products contain 90 fluid ounces of detergent. The Product therefore only contains 40 large or full loads of laundry detergent.[4]

34.    The Products' front labels do not contain any clarifying information or reveal that the "60 loads" advertisement is only as measured to what Defendant defines as a "medium dose" of laundry.

35.    Defendant does not disclose that reasonable consumers who do laundry in loads reasonable characterized as "large" therefore only get half as many, or 40 loads of laundry from the Products, and not 60 loads as advertised.

36.    Additionally, while consumers are instructed to measure the laundry detergent to the lines provided by the Products' cap, the measuring lines found on the inside of the measuring cup are barely legible. Reasonable consumers are therefore likely to measure to the prominent indentations within the cap that are measured to line 4 (1.75 fl. oz) and will only receive 51 loads of laundry:



37.   Consumers have left numerous negative reviews on Defendant's website, www.seventhgeneration.com, regarding the barely-legible lines in the Clean with Purpose Products' measuring cap. Representative consumer reviews include:



Seventh GENERATION          Home Care   Our Company   Get Involved   Blog   |   Contact U

★☆☆☆☆

NO MEASURING LINES ON CAP (Or Numbers!)

Sickacrap

11 months ago

For crying out loud... The DIRECTIONS tell us to 'measure to this line or that' but there ARE no lines!! And? I see someone asked this question and instead of an actual answer? It was 'referred' to whatever 'team' handles this! What a (virtual) load od CRAP!

Repeat Purchase no

✖ No, I do not recommend this product.

Seventh GENERATION          Home Care   Our Company   Get Involved   Blog   |   Contact

★☆☆☆☆

Horrible New Green Cap

MRO29

a year ago

I have used this detergent for quite some time and been happy with it. However, the new green cap is absolutely terrible...bad enough for me to switch to a different product. The instructions say to fill to "Line 3" or "Line 5" and there is not a "Line 3" or "Line 5" on the cap. There aren't any measuring lines on the cap...so no clue how much to add to the laundry. It's also very messy, with the detergent dripping out when you put the cap back on. It's a terrible step back in packaging. I pay extra to have a better product. I definitely did not get my money's worth this time! If you see the green cap move on and buy something else.

Repeat Purchase no

✖ No, I do not recommend this product.

Seventh GENERATION          Home Care   Our Company   Get Involved   Blog   |   C

★☆☆☆☆

The Cap Will Make A Mess Of Your Laundry Room.

Lilu75

a year ago

Where is line 4?? And "just below line 5"? There are no lines on it, and I got my sink full of foam trying to clean the drippings from the cap, no matter how careful I pour.

Repeat Purchase no

✖ No, I do not recommend this product.

Seventh GENERATION          Home Care   Our Company   Get Involved   Blog   |   Cont

★☆☆☆☆

Formula Change?

emem

a year ago

just to echo all of the other comments about the new cap, it's awful. where are the measurement lines? i have perfect vision and cannot see them. also- i've been using this detergent for years and i'm all of a sudden itchy everywhere. was there a formula change?? i'm absolutely baffled i didn't expect to have a sudden allergic reaction.

13

CLASS ACTION COMPLAINT

1

**Seventh** GENERATION

Home Care    Our Company    Get Involved    Blog    |    Contact

2

3

★☆☆☆☆

HATE THE NEW LID!

4

JP70

a year ago

5

I too hate the new lid! I'll second what most people have already said in other reviews. The most glaring offense being the lack of measurement lines inside the lid when the directions clearly advise using them to measure out the detergent. Plus they leak and my bottle looks like the ones others here have posted, a sticky icky white mess. I know you guys spent a lot of money designing these new bottles but please go back top the old one. Or redesign the cap to at least have the measuring lines.

6

7

**Seventh** GENERATION

Home Care    Our Company    Get Involved    Blog    |    Contact Us

8

9

★☆☆☆☆

No Lines New Lid. AND NO LONGER CRUELTY FREE?!?!?!

Greenwashing101

10

a year ago

Bought Seventh Generation detergent recently and noticed new packaging. This green lid has no measurement lines on it. The instructions say to fill to specific lines depending on

11

the load, but there are no lines. I did an internet search to see if anyone else had this problem and was immediately taken to this page. Then I noticed the responses to reviews directing customers to a Unilever email address! Unilever is NOT a cruelty free company. Sure Seventh Generation may be, but ultimately by buying Seventh Generation, I am funding Unilever. Thanks but no thanks!

12

**Repeat Purchase** no

13

⊗ No, I do not recommend this product.

14

**Seventh** GENERATION

Home Care    Our Company    Get Involved    Blog    |    Contact

15

16

★☆☆☆☆

Terrible New Green Cap!

17

Trina

a year ago

18

I have used the liquid laundry detergent for many years; until now, I would not have used any other product. However, the "free & clear" with the new green cap has changed my mind. The instructions say to fill to line 3 or line 5, but there are no lines on the new, green cap! And the cap is difficult to use. Please return to the white cap on the liquid detergent, and also return to the original formula, if you have changed the formula for the "new green cap." I am very unhappy with the changes you have made in this product,

19

and I will now search for a new product to use, unfortunately. Thank you for your attention and action.

20

**Repeat Purchase** no

⊗ No, I do not recommend this product.

21

22

**Seventh** GENERATION

Home Care    Our Company

23

★☆☆☆☆

24

Weird Green Cap

25

Grammy

a year ago

26

As others have said, the green cap does not have any measuring lines on it. I have no idea how much to use. Will not buy again.

27

//

28

//

14

CLASS ACTION COMPLAINT



**Seventh GENERATION**

Home Care   Our Company   Get Involved   Blog   |   Contact

★★★★★
Instructions Useless

Chris22

2 months ago

Cap doesn't measure as instructions require. Nobody proofread before producing the product, which makes you wonder what else slipped through the cracks. Are the ingredients as they say? Who knows..

**Repeat Purchase** no

✖ No, I do not recommend this product.

**Seventh GENERATION**

Home Care   Our Company   Get Involved   Blog   |   Contact

★★★★★
Disappointed

Less Plastic Please

6 months ago

Bought this plastic jug of laundry detergent locally when I ran out of Tru Earth ultra concentrated Eco-Strips, which I buy online and love using. (I did use Seventh Generation products for YEARS before I found a better alternative WITHOUT PLASTIC.) So now I have 90 ounces of this liquid detergent, and can't even find the line inside the cap to measure the correct amount for my washing machine.

**Seventh GENERATION**

Home Care   Our Company   Get Involved   Blog   |   Contact

★★★★★
Cap Has No Measuring Lines, Label Is Worthless.

garykay

8 months ago

Cap shows no measuring lines (like so many others have said). The label says to use "line 3 for medium loads, line 5 for heavy loads" -- well, no lines on the lid, so don't know how much to use. Instead of just referring my question to customer support, why not just answer the question here -- for others and myself. Maybe give us the number of ounces for medium or heavy loads for starters.

**Seventh GENERATION**

Home Care   Our Company   Get Involved   Blog   |   Contact

★★★★★
Product Packaging Needs Work

amy234

9 months ago

First time buying this and though the detergent seems ok, there are no lines on the cap to measure the liquid out, even though the directions say to use the cap lines. They don't exist. Also the cap spills down the bottle every time I pour or put the cap back on, so its a mess after using it just three times.

**Seventh GENERATION**

Home Care   Our

★★★★★
Messy

Mml48

a year ago

I love the detergent, but the green cap I'd very messy. If there are any lines for measuring, you can't see them.

---

15

CLASS ACTION COMPLAINT

38.   Confused consumers have also left questions on Defendant's website regarding the barely-legible lines in the Clean with Purpose Products' measuring cap. Representative questions and responses include:



39.   Reasonable consumers are therefore  likely to be deceived by the Products' labels.

**C. Defendant's Power+ Laundry Detergent Products**

40.   Defendant manufactures and sells laundry detergent under a "Power+"

brand, which is advertised as "Fights Stains" and "6x Cleaning Agents." The Power+ Products are sold in various scents. The front label of the Power+ Products prominently represent that the Products contain "50 loads" worth of laundry detergent. Below is a true and correct copy of the front label of Defendant's Power+ Product in the fragrance free variety:



CLASS ACTION COMPLAINT

41.   The rear labels of the Power+ Products reveal that the Products contain 50 loads of laundry only "as measured to medium dose," and consumers must measure to 1.75 fl. oz. of detergent for what Defendant defines as a "medium" load of laundry, and measure to 2.6 fl. oz. of detergent for what Defendant defines "heavily soiled or larger loads:



42.    The Power+ Products contain 87.5 fluid ounces of detergent. The Power+ Products therefore only contain 33 large or full loads of laundry detergent.

43.    The Products' front labels do not contain any clarifying information or reveal that the "50 loads" advertisement is only as measured to what Defendant defines as a "medium dose" of laundry.

44.    Defendant does not disclose that reasonable consumers who do laundry in loads reasonable characterized as "large" therefore only get half as many, or 33 loads of laundry from the Products, and not 50 loads as advertised.

45.    Additionally, while consumers are instructed to measure the laundry detergent to the lines provided by the Products' cap, the measuring lines found on the inside of the measuring cup are barely legible:



46.    Consumers have left negative reviews on Defendant's website, www.seventhgeneration.com, regarding the barely-legible lines in the Power+ Products' measuring cap. Representative consumer reviews include:

//

CLASS ACTION COMPLAINT



47.    Confused consumers have also left questions on Defendant's website regarding the barely-legible lines in the Power+ Products' measuring cap. Representative questions and responses from Seventh Generation customer services include:

48.    Reasonable consumers are therefore    likely to be deceived by the Products' labels.

**D. Defendant's Representations Harm Consumers**

49.    Many companies, like Defendant, have scrambled to manufacture, market, and sell purportedly high laundry load products at the same or lower costs, in an effort to gain market share and outsell competitors. Unfortunately, rather than

20

CLASS ACTION COMPLAINT

creating actual high laundry load products that consumers desire, Defendant makes Products that contains fewer loads of laundry detergent than is advertised on the Products' packaging and front labels, and markets them to consumers through deceptive labeling and packaging claims.

50.    A national survey of American consumers' laundry habits commissioned by LG Electronics USA found that nearly nine out of ten consumers believe a larger load capacity is one of the most important features in washers and dryers, and 80% say that bigger is always better when it comes to load capacity.[5] Out of the more than 1,000 Americans ages 18 and over who participated in the survey commissioned by LG Electronics USA, nearly all (93 percent) admit they mixed items just to avoid a second load of laundry.[6]

51.    As such, most consumers wash the largest load of laundry possible, but when they follow the Products' instructions for a large laundry load, the Products only contain enough laundry detergent to wash half of the number of loads advertised on the Products' front labels.

52.    Reasonable consumers read and understand Defendant's laundry load representations as providing, under normal and reasonable conditions for use, the maximum results promised. Indeed, the U.S. Federal Trade Commission has explicitly determined this to be the case, stating its view "that advertisers using these claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances."[7]

53.    Reasonable consumers who take advantage of the whole usable capacity of their washing machines will only be able to do half of the number of laundry loads

---

[5] https://americancoinop.com/articles/consumers-love-large-capacity-washers-survey-shows

[6] https://www.prnewswire.com/news-releases/new-survey-reveals-us-consumers-will-do-almost-anything-to-avoid-doing-a-second-load-of-laundry-300480341.html

[7] https://www.ftc.gov/news-events/news/press-releases/2012/06/ftc-report-many-consumers-believe-claims-promise-maximum-results

CLASS ACTION COMPLAINT

than the number of laundry loads advertised on the Products' labels.

54.    Based on Defendant's labeling of the Products, reasonable consumers would expect that the Products contain the number of laundry loads advertised on the Products' front labels.

55.    Defendant's representations harm consumers by inducing them to make a purchase believing they are getting more detergent than they are actually getting.

56.    If not for the deception, consumers would not have purchased or would have paid less for the Products, as they contain less detergent than advertised on the Products' front labels.

**E. Plaintiff was Misled by Defendant's Misrepresentations**

57.    Plaintiff Butler purchased the EasyDose Product at a retail store in California during the Class Period. Plaintiff Butler believed he was receiving the represented number of loads of laundry detergent when purchasing the Product.

58.    Plaintiff Butler relied on the representations on the label when deciding to purchase the EasyDose Product. He would not have purchased the EasyDose Product, or would not have paid as much as he did if he had known he was receiving less than what was represented.

59.    Plaintiff acted reasonably in relying on the Products' front label advertising claims that Defendant intentionally placed on the Products' labels and packaging with the intent to induce average consumers into purchasing them.

60.    Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the violations were known to Defendant, and not to him throughout the Class Period defined herein.

61.    Plaintiff paid a premium for the EasyDose Product, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

62.    For these reasons, the Product was worth less than what Plaintiff paid for it.

CLASS ACTION COMPLAINT

63. Plaintiff would like to, and would, purchase the Product again when he can do so with the assurance that the Product's label is truthful.

64. However, Plaintiff will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the Product again although he would like to.

65. Plaintiff lost money as a result of Defendant's deceptive claims and practices in that he did not receive what he paid for when purchasing the Product.

66. Plaintiff detrimentally altered his position and suffered damages in an amount equal to the premium he paid for the Product.

67. The senior officers and directors of Defendant allowed the Products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## SUBSTANTIAL SIMILARITY

68. Defendant's Products described herein are substantially similar, as they each contain (1) a laundry load representation conspicuously and prominently placed on the primary display panel of the Products' front labels; (2) contain no front-label disclaimer that the Products' laundry load advertisement is only measured as to a "medium dose" of laundry; and (3) contain less loads of laundry than advertised on the Products' front labels.

69. The misleading advertising on the Products' front labels are all the same: consumers are led to believe that each Product contains the advertised laundry load amount; however, the Products do not contain the number of laundry loads advertised. Consumers therefore pay more than what the Products would be worth had Defendant's advertising been true.

## CLASS ALLEGATIONS

70. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following Classes (or alternative Classes or Subclasses):

//

**The Nationwide Class**

All U.S. citizens who purchased the Products in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

**The California Subclass**

All California citizens who purchased the Products in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

71.     The Classes and Subclasses described in this complaint will jointly be referred to the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

72.     Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

73.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

74.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

75.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are hundreds of consumers who are Class Members described above who have been damaged by Defendant's practices.

76.     <u>Commonality</u>: There is a well-defined community of interest in the

common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant made false or misleading statements of fact relating to the labeling of the Products;

b.    Whether Defendant violated state consumer protection statutes;

c.    Whether Defendant practices violate California's Consumers Legal Remedies Act;

d.    Whether Defendant practices violate California's Unfair Competition law, California Business and Professions Code sections 17200, *et. seq.*,

e.    Whether Defendant breached an express warranty for the Products;

f.    Damages needed to reasonably compensate Plaintiff and Class Members; and

g.    Whether Plaintiff and the proposed Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of this suit.

77.   <u>Typicality</u>: Plaintiff is a member of the Class Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the misrepresented Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

78.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the alleged claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating Plaintiff's rights. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately

protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

79.    <u>Superiority</u>: The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

    c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

    f.    This class action will assure uniformity of decisions among Class Members;

    g.    The Class is readily definable and the prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

    h.    Class Members' interests in individually controlling the prosecution of

CLASS ACTION COMPLAINT

separate actions is outweighed by their interest in the efficient resolution by a single class action.

80.   In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole appropriate.

81.   Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

82.   Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct.

### FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act

### Cal. Civ. Code §§ 1750, *et seq.*

83.   Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

84.   Plaintiff brings this claim under the CLRA individually and on behalf of the California Subclass against Defendant.

85.   At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

86.   At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

87.   At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

88.   The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section

1761(e).

89.    Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain a certain number of loads of laundry detergent. Defendant failed to properly disclose that the Products contain less than what was represented. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain less than what is represented to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a)    Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b)    Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)    Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)    Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

90.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

91.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the  Products have characteristics which they do not have.

92.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

93.    Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and

CLASS ACTION COMPLAINT

demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will amend the complaint to seek damages.

94.   Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in the proper forum.

## SECOND CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

95.   Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

96.   Plaintiff brings this claim under the UCL individually and on behalf of the California Subclass against Defendant.

97.   The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

98.   Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

99.   Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff

29

and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for Products that were not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain fewer loads of laundry detergent than advertised) of which Defendant had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

100. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

101. Defendant's wrongful business practices and violations of the UCL are ongoing.

102. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

103. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from

Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

**THIRD CLAIM FOR RELIEF**

**Breach of Express Warranty**

**Cal. Com. Code § 2313(1)**

104. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

105. Plaintiff brings this claim for breach of express warranty individually and on behalf of the Classes against Defendant.

106. As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contained a certain number of loads of laundry detergent.

107. Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representation that the Products contain a certain number of loads of laundry detergent.

108. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

109. In fact, the Products do not conform to Defendant's representations because the Products contain fewer loads of laundry detergent than represented. By falsely representing the Products in this way, Defendant breached express warranties.

110. Plaintiff relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty.

111. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the Products that were not as Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

## REQUEST FOR RELIEF

112. Plaintiff, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim set forth in this complaint, as follows:

a.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.    Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.    Ordering such other and further relief as may be just and proper.

CLASS ACTION COMPLAINT

1

## **J**URY **D**EMAND

2   113. Plaintiff hereby demands a trial by jury of all claims in this Complaint so

3 triable.

4

5 Dated: November 13, 2024     CROSNER LEGAL, P.C.

6

7            By: _/s/ Lilach H. Klein_____

8             Lilach H. Klein

9            9440 Santa Monica Blvd. Suite 301

             Beverly Hills, CA 90210

10           Tel: (866) 276-7637

11           Fax: (310) 510-6429

             _lilach@crosnerlegal.com_

12

13           ***Attorneys for Plaintiff and the***

14           ***Proposed Class***

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

## Civil Code Section 1780(d) Affidavit

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. Defendant has done, and is doing, business in California, including in this county. Such business includes the marketing, promotion, distribution, and sale of the Products. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on November 13, 2024 in Sacramento, California.

Crosner Legal, P.C.

By:    */s/  Lilach H. Klein*
        LILACH H. KLEIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
lilach@crosnerlegal.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT